HOOD, Senior District Judge,
dissenting.
I disagree with the majority’s conclusion that Oaks’s escape from a courtroom, without proof that the courtroom had a secure perimeter, was not a violent felony for sentencing purposes. Rather, I conclude that because he was within the custody of law enforcement personnel at the time of his escape from the courthouse setting that he is an offender “significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a ‘serious potential risk of physical injury.’” Chambers v. United States, 555 U.S. 122, 128-29, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009).
Oaks was being held in a secure county jail before being taken by his custodian to the courthouse for an appearance on felony charges of evading arrest, felony reckless endangerment, attempted aggravated robbery, theft over $500.00 and aggravated burglary. Obviously the courtroom is not as secure as the county jail, but I am hard pressed to imagine an individual who is “significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a ‘serious potential risk of physical injury,’ ” than someone who flees from law enforcement custody during an appearance in a matter in which he is facing felony charges.
The United States Sentencing Commission’s Report on Federal Escape Offenses in Fiscal Years 2006 and 2007 (Nov. 2008) (hereinafter, “Report”), to which both the Chambers court and the majority have given great weight, supports this conclusion. The Report defines “secure escape” as those situations in which individuals have left secure custody or law enforcement custody.[1] Report at 6. 14.3% of the secure escape cases involved force compared to 0.9% of instances of nonsecure escapes.[2] Id. at 7. 27.3% of secure escapes involved a *722 dangerous weapon while only 2.7% of the nonseeure escapes involved a dangerous weapon.[3] Id. at 8. Injury accompanied 11.7%" of the secure escapes as opposed to 0.9% of the nonseeure escapes.[4] Id. Even if one considers only those escapees who left or attempted to leave law enforcement custody, 7.7% used force, 7.7% were instances that involved dangerous weapons, and injury accompanied 15.4% of the escapes. Id. at 7.
Ultimately, Tenn.Code Ann. § 39-16-601(3) (2009) defines “[ejscape” as the “unauthorized departure from custody” and clearly contemplates Oaks’s conduct in this instance. Chambers does not preclude a finding to the contrary. I would affirm.

. "Leaving secure custody” occurred when an "escapee left (or attempted to leave) the custody of a location with a secure perimeter, such as a prison or jail.” Report at 4. "Leaving law enforcement custody” occurred when an "escapee left (or attempted to leave) the custody of a law enforcement officer, such as during transport between institutions.” Id.

. The Report groups together those instances in which an offender left nonsecure custody, failed to return to custody to serve an incarceration sentence, or failed to report to custody as "nonsecure escapes.” Report at 6.

. A dangerous weapon “was considered to be present if the sentencing documentation indicated that the offender used, brandished, or otherwise possessed any dangerous weapon in connection with the escape. For purposes of this analysis, a dangerous weapon means an instrument capable of inflicting death or serious bodily injury.” Report at 5.

. “This factor was considered to be present if the sentencing documentation indicated that the offender caused any bodily injury (including death) to another in connection with the escape.” Report at 5.